UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TIFFANY D.,[1]

                                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

**DECISION AND ORDER**

1:19-CV-0994(JJM)

       This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the Commissioner of Social Security's final determination that plaintiff was not entitled to Supplemental Security Income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [10, 15].[2] The parties have consented to my jurisdiction [16]. Having reviewed the parties' submissions [10, 15], the action is remanded.

## BACKGROUND

       The parties' familiarity with the 534-page administrative record [6] is presumed. Plaintiff filed for SSI in June 2016,[3] when she was 45 years old, due to depression, history of cervical cancer, seizures, blackouts, fibromyalgia, a cracked pelvic bone in 2004, and nerve damage. Id., pp. 65, 163.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[3]     Earlier applications for benefits had been filed by plaintiff in 2008 and 2011. [6], p. 65.

Preceding the filing of this SSI application, plaintiff was seen at the Community Health Center of Buffalo on October 31, 2014 for "chronic pain all over the body". Id., p. 201. At that time, she reported that she could not sit or stand for long periods of time. Id. It was noted that she had "positive tender points for [fibromyalgia]" and was referred to "neurology for evaluation of possible fibromyalgia". Id., p. 202. Although that evaluation does not appear to be in the record, when she returned on September 14, 2015 for a routine visit, her "assessments" included fibromyalgia and depressive disorder. Id., p. 204. On April 27, 2016, plaintiff returned to the Community Health Center of Buffalo for treatment of her continued depression and body pain. Id., p. 206. For her fibromyalgia, plaintiff was placed on an increased dosage of Lyrica. Id., p. 207.

Following her application for SSI, plaintiff was involved in a November 29, 2016 motor vehicle accident. Prior to this, she had no previous neck injury, and underwent no physical therapy or chiropractic treatment. Id., p. 211. Thereafter, she treated regularly with chiropractor Scott Croce, DCPC, through May 29, 2018 for her back and shoulder pain. Id., pp. 241-417. During his treatment, he regularly noted that the Jackson's lateral compression test, maximum cervical compression test, straight leg test,[4] and Kemp test[5] were all positive on the right side. Id., pp. 253, 403, 410, 370, 375, 382, 393.

On January 16, 2017 plaintiff began treating with the Dent Neurologic Institute ("Dent") for headaches that increased with frequency and intensity since her motor vehicle

---

[4] "A straight-leg-raise test involves mechanical manipulation of the legs, stressing the neurological tissues in the spine; specific symptoms reported at different degrees of flexion can indicate nerve compression." Leticia T. v. Saul, 2020 WL 5044130, *3 n. 7 (C.D. Cal. 2020).

[5] "The Kemp test assesses the lumbar-spine facet joints to detect pain." Leticia T., 2020 WL 5044130, *3 n. 8.

accident. Id., pp. 234-37.  At that time, plaintiff was examined by Nicolas Saikali, M.D., who assessed her with full range of motion in her extremities, as well as "5/5" strength. Id., p. 236. Her gait was "steady and symmetric". Id.  "[S]ome trigger points" were felt in the trapezius muscles bilaterally", which were "tender to light touch".  Id.   Plaintiff was assessed with "myofascial muscle pain and "migraine[s] without aura and with status migrainosus, not intractable". Id., p. 237.  On January 24, 2017, plaintiff began receiving trigger point injections for her headaches. Id., pp. 232-34.  At that time, the range of motion in her neck was noted to be "slightly limited in all directions", and she had "trapezius tenderness . . . present bilaterally around associated trigger points". Id., p. 233. Plaintiff was assessed with myalgia and myofascial muscle pain. Id. A subsequent MRI of her brain revealed a "large vellum interpositum cyst", but without any ventricular obstruction.  Id., p. 239.

On February 6, 2017, plaintiff was seen by Zair Fishkin, M.D. of Pinnacle Orthopedic and Spine Specialists, who saw plaintiff for her neck and low back pain.  Lumbar and cervical MRIs taken on January 20, 2017 revealed a "central subligamentous L5-S1 disc herniation indenting the anterior aspect of the thecal sac"; a "left paracentral subligamentous C4-5 disc herniation indenting the anterior aspect of the thecal sac"; and a "central subligamentous C5-6 disc herniation indenting the anterior aspect of the thecal sac".  Id., p. 212.

On examination, Dr. Fishkin noted that plaintiff had normal gait and full strength in her upper and lower extremities, but had decreased range of motion in her cervical and lumbar spines. Id., p. 213.  A straight leg test was negative bilaterally.  Id.  Dr. Fishkin opined that plaintiff "suffered significant injuries to [her] spine as a result of the motor vehicle accident", and recommended continued chiropractic treatment. Id., p. 214.

At an October 30, 2017 reevaluation with Dent, plaintiff reported that the earlier trigger point injections had "worked extremely well for her". Id., p. 229.  At a subsequent November 7, 2017 appointment for trigger point injections, it was noted that the range of motion in her cervical spine was "moderately limited in all directions".  Id., p. 228.  Many of the Dent records reflect that plaintiff was "counseled on the importance of moderate physical activity daily".  See, e.g., id., pp. 228, 231, 234, 237, 494, 500.

On February 8, 2018, plaintiff was seen by Marc Frost, M.D. for an evaluation of her seizures. Id., p. 506.   Dr. Frost found that she was alert, followed all "1 and 2 step" commands, and had "appropriate mood".  Id., p. 508.  Physically, she continued to have full strength in her all extremities and normal gait.  Id.   All tests conducted, including finger to nose, heel to shin, Romberg, pinprick sensation, and vibratory sensation, were all normal, negative, or intact. Id.  Dr. Frost assessed plaintiff with "epilepsy, not refractory". Id., p. 509.

On March 14, 2017,  plaintiff was seen by A. Marc Tetro, M.D. for her right shoulder pain, which she reported was aggravated by reaching and lifting.  Id., pp. 221-25.  Dr. Tetro assessed plaintiff with "right shoulder rotator cuff tendonitis/impingement syndrome, possible rotator cuff tear, post-traumatic AC joint sprain and cervical origin pain" arising from the November 2016 motor vehicle accident. Id., p. 223. Plaintiff received a subacromial corticosteroid injection, which resulted in "overall improvement in shoulder symptoms".  Id., p. 224.

On January 5, 2018 plaintiff was seen at Dent for migraines and neck pain. Id., p. 497.   At that time, plaintiff had a "slight decrease in cervical range of motion 25% left and right lateral rotation".  Id., p. 499.  However, it was noted that because of "significant cervical spasming", a "discogenic condition" could not be ruled out. Id. An occipital nerve block was

administered (id.), and at her subsequent January 31, 2018 appointment, plaintiff received another occipital nerve block, which she reported had been providing a "meaningful decrease" in her neck pain and headaches.  Id., p. 510.  At that time, the range of motion in her neck remained "mildly limited in all directions". Id., p. 512.

Although earlier treatment notes from Dr. Croce indicated that "progress is expected" (*see, e.g.*, id., p. 393), by April 26, 2018 he noted that plaintiff had "entered a new phase of care.  Chiropractic treatment remains palliative in nature, with the goal of preventing symptomatic regression". Id., p. 375.  On May 29, 2018, Dr. Croce described plaintiff as in moderate distress; her ambulation was "labored, slow and uncomfortable".  Id., p. 369.

After plaintiff's claim was initially denied, an administrative hearing was held on September 18, 2018 before Administrative Law Judge ("ALJ") William Weir, at which plaintiff, who was represented by an attorney, and a vocational expert testified. Id., pp. 27-62.  Plaintiff testified that she was unable to stand or sit for more than 30 minutes.  Id., pp. 37-38. Lyrica had improved her blackouts and seizures.  Id., pp. 40-41, 43.  Injections also helped her migraine headaches.  Id., p. 42. Plaintiff ceased treating with a mental health professional about seven years earlier because the treatment was not helpful. Id., p. 51. She also elected not to take antidepressant medication because it made her "zone out . . . to the point where I can't do absolutely nothing". Id., pp. 53-54.

On July 25, 2018, ALJ Wier issued a decision finding that plaintiff was not disabled. Id., pp. 13-22.  He determined that plaintiff's severe impairments were migraine headaches and a depressive order, not otherwise specified.  Id., p. 15.  ALJ Weir concluded that plaintiff had the residual functional capacity ("RFC") to perform light work, with the following additional limitations:  "no more than simple repetitive one- and two-step tasks", no "complex

work" (*i.e.*, work "involving multiple simultaneous goals, or objectives, or the need to independently set quality, quantity, or method standards", "experience no more than one change per day in general work tasks or setting".  Id., p. 23.

In formulating that RFC, ALJ Weir gave "little weight" to Dr. Croce's determination that plaintiff was temporarily totally disabled, and otherwise noted that "[a]s for the opinion evidence, there are no statements of treating or examining physicians indicating the claimant i[s] unable to work" . Id., p. 20. He further explained that "[t]he medical evidence, showing rather adequate management of the claimant's conditions, and mostly moderate imaging and clinical findings, simply does not establish physiological abnormalities, which would limit the claimant's daily activities to the debilitating degree alleged or preclude the claimant from performing at the [RFC] as assessed".  Id.

Based on the RFC, ALJ Weir concluded that plaintiff was unable to perform her past relevant work, but that there were significant jobs in the national economy that she was able to perform, and therefore was not disabled from June 8, 2016, the date of her SSI application, though the date of his  September 18, 2018 decision. Id., pp. 20-22.

The Appeals Council denied plaintiff's request for review on May 28, 2019.  Id., pp. 1-3.  Thereafter, this action ensued.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  *See also* Ramsey v. Commissioner of Social Security, __Fed. App'x __, 2020 WL 6372994, *1 (2d Cir. 2020) (Summary Order) (substantial evidence "is a 'very deferential standard of review - even more so than the clearly erroneous standard.'. . . Notably, if the evidence 'is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld'").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process.  *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Weir (1) "did not make a reasonable effort to obtain a proper opinion from [her] treating providers and instead relied on his own lay interpretation of the raw medical evidence to determine [her] RFC"; (2) "failed to apply the appropriate legal principles to determine whether fibromyalgia was a medically determinable impairment"; and (3) "failed to consider [her] additional diagnoses at step two, most notably those which limit [her] range of motion in her neck and low back, leading to a step four error in that the RFC finding fails to account for these limitations".  Plaintiff's Memorandum of Law [10-1], p. 1. Therefore, she asks that the Commissioner's decision be vacated and remanded for further administrative proceedings.  Id., p. 25.

**B.      Did ALJ Weir, as a Layperson, Improperly Formulate the RFC?**

In the absence of a competent medical opinion, an ALJ, as a layperson, is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself". Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018).  "As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Nelson v. Commissioner of Social Security, 351 F. Supp. 3d 361, 366 (W.D.N.Y. 2018). *See* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Smith v. Saul, 2019 WL 2521188, *2 (W.D.N.Y. 2019) ("[d]ecisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence").

However, "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion, and remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the [plaintiff]'s [RFC].'" Williams v. Colvin, 2016 WL 2640349, *3 (W.D.N.Y. 2016) (*quoting* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013) (Summary Order)). *See also* Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8-9 (2d Cir. 2017) (Summary Order) (finding ALJ did not err in rejecting opinion of treating psychologist because the record contained "years' worth" of the provider's "contemporaneous treatment notes," which contained "assessments of [the claimant's] mood,

energy, affect, and other characteristics relevant to her ability to perform sustained gainful

activity"); Corbiere v. Berryhill, 760 Fed. App'x 54, 57 (2d Cir. 2019) (Summary Order)

(treatment records indicating that the plaintiff could "stand and walk without difficulty" and had

"full lower extremity strength" constituted substantial evidence for the RFC that plaintiff had the

capacity to perform sedentary work).  It is also permissible for an ALJ to render a common sense

judgment about functional capacity even without a physician's assessment where "the medical

evidence shows only minor physical impairments".  Perkins, 2018 WL 3372694, *3.

        Nonetheless, it remains the "general rule, where the transcript contains only

diagnostic evidence and no opinion from a medical source about functional limitations, to fulfill

the responsibility to develop a complete record, the ALJ must recontact the treating source, order

a consultative examination, or have a medical expert testify at the hearing." Nanartowich v.

Commissioner of Social Security Administration, 2018 WL 2227862, *11 (W.D.N.Y. 2018).

Courts also remain "wary of permitting an ALJ to use common sense to assess mental

limitations, which are by their nature highly complex and individualized". Stoeckel v.

Commissioner of Social Security, 2019 WL 5445518, *2 (W.D.N.Y. 2019).

        Here, I am unable to conclude that there was sufficient evidence from which ALJ

Weir could assess plaintiff's RFC or sufficiently minor impairments enabling him to render a

common sense judgment about plaintiff's limitations.  The Commissioner fails to point to, nor

does it appear that there were, any treatment notes reflecting plaintiff's functional limitations that

could permit ALJ Weir, as a layperson, to formulate the RFC.  From the relatively restrictive

RFC ALJ Weir formulated, it is also apparent that he believed that plaintiff had more than minor

exertional and non-exertional limitations from her impairments.

Without a medical source opinion or functional assessment substantiating plaintiff's ability to perform light work with the additional non-exertional limitations assessed by ALJ Weir, the RFC is unsupported by substantial evidence.  It was simply beyond ALJ Weir's ability, as a layperson, to craft the highly specific RFC without that medical support.  *See* Dowling v. Saul, 2020 WL 2079113, *7 (D. Conn. 2020) ("[b]ecause there is no medical source opinion or functional assessment supporting the ALJ's finding that [the claimant] can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate."); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018); Dye v. Commissioner of Social Security, 351 F. Supp. 3d 386, 390–91 (W.D.N.Y. 2019) ("an ALJ is not a medical professional, and is not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Sinopoli v. Berryhill, 2019 WL 3741051, *11 (S.D.N.Y. 2019), adopted, 2019 WL 3734059 (S.D.N.Y. 2019) ("[i]t is possible a medical expert could review the diagnostic findings and imaging . . . and opine that Plaintiff could meet the lifting requirements of light work . . . .  Such an opinion would support the ALJ's otherwise carefully considered opinion", but without it remand was necessary).

The Commissioner points to the fact that medical providers recommended that plaintiff perform daily moderate physical activity supported the RFC.  Commissioner's Brief [15-1], p. 14.  The mere fact that Dent regularly counseled plaintiff on the importance of a

healthy lifestyle, including undertaking daily physical activity (*see, e.g.*, [6], pp. 228, 231, 234, 237, 494, 500), does "not speak to the Plaintiff's capacity to perform "light work" or the functional limitations caused by his physical impairments". <u>Borrero v. Saul</u>, 2020 WL 7021675, *10 (D. Conn. 2020).  The Commissioner further notes that ALJ Weir relied on the fact that "none of the acceptable medical sources assessed any work-place preclusive restrictions or limitations" in formulating the RFC.  Commissioner's Brief [15-1], p. 14 (*citing* [6], p. 20).  However, the deficiency here does not stem from the fact that no medical source[6] assessed plaintiff with disabling limitations, but rather from the fact that no medical sources assessed plaintiff's functional limitations, disabling or not.  *See* <u>Nanartowich</u>, 2018 WL 2227862, *11.

Because ALJ Weir's RFC is not supported by substantial evidence, this case is remanded for further administrative proceedings.

**C.     Did ALJ Weir Properly Consider the Evidence that Plaintiff Suffered from Fibromyalgia?**

Social Security Ruling ("SSR") 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia[.]"2012 WL 3104869, *1 (July 25, 2012). "[S]pecifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other

---

[6]     ALJ Weir noted that plaintiff "was not sent for a consultative exam due to noncompliance" [6], p. 19.  However, the Commissioner does not rely upon that as a justification for the absence of medical source opinion of plaintiff's functional limitations. Nor did the ALJ use that a basis for denying plaintiff's claim.  *See* <u>Agostino v. Commissioner of Social Security</u>, 2020 WL 95421, *4 (W.D.N.Y. 2020) ("[w]hile the regulations permit an ALJ to find that a claimant is not disabled if the claimant fails or refuses to take part in a consultative examination, 20 C.F.R. § 404.1518(a), the ALJ did not rely on that provision to deny Agostino's claim").

evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions,[7] and evidence that other disorders that could cause these repeated manifestations were excluded." Cooper v. Commissioner of Social Security, 2019 WL 1109573, *4 (W.D.N.Y. 2019).  "The first of these methods for determining whether fibromyalgia is a medically determinable impairment is based on the 1990 American College of Rheumatology . . . Criteria for the Classification of Fibromyalgia (the '1990 ACR Criteria') . . . .  The second method is based on the 2010 ACR Preliminary Diagnostic Criteria (the '2010 ACR Criteria')". Diaz v. Commissioner of Social Security, 2019 WL 2401593, *3 (W.D.N.Y. 2019).

Using that standard, ALJ Weir concluded that plaintiff's fibromyalgia was not a medically determinable impairment, explaining that:

> "In June 2016, treatment notes from Erie County Medical Center state, the claimant reported that she had a history of fibromyalgia . . . . The only records contained in the claimant's file regarding fibromyalgia are dated October 2014 from Community Health Center of Buffalo . . . . These records show the claimant was referred for a neurological evaluation for possible fibromyalgia . . . . In the absence of medical signs and/or laboratory findings demonstrating the existence of a medically determinable physical impairment, the claimant's symptoms alone cannot be the basis for a finding of disability, no matter how genuine the complaints may appear to be . . . . Accordingly, the alleged impairment of fibromyalgia is not medically determinable, and will not be considered further in reaching a decision. Specifically, I am unable to use that allegation alone to establish a medically determinable impairment, absent any contemporaneous diagnosis or treatment or objective signs in the record." [6], p. 16.

---

[7]      These include "especially fatigue, cognitive of memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome". Kaytlin B. v. Commissioner of Social Security Administration, 2020 WL 5803937, *4 (D. Or. 2020).

While the record is not definitive as to whether plaintiff was diagnosed with fibromyalgia or the symptoms and/or diagnostics supporting any such diagnosis, it points more to her having a properly supported diagnosis, than not.  For example, the October 2014 Community Health Center of Buffalo records indicate that she had "positive tender points for [fibromyalgia]", and was referred to "neurology for evaluation of possible fibromyalgia".  [6], p. 202.  Although that evaluation does not appear to be in the record, when she returned on September 14, 2015 for a routine visit, she was assessed with fibromyalgia, indicating that an intervening diagnosis was made. Id., p. 204.  Further evidencing the existence of a fibromyalgia diagnosis, on April 27, 2016 plaintiff returned to the Community Health Center of Buffalo and was placed on an increased dosage of Lyrica for her fibromyalgia.  Id., p. 207.

"SSR 12-2p directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate information to determine whether the claimant has a medically determinable impairment of fibromyalgia." Villar v. Commissioner of Social Security, 2020 WL 1131225, *4 (W.D.N.Y. 2020).  Therefore, ALJ Weir should have recontacted plaintiff's treating providers to obtain additional information, including whether and how plaintiff was diagnosed with fibromyalgia, to help him determine whether the fibromyalgia criteria were satisfied.  See Cooper, 2019 WL 1109573, *4 ("rather than reject Cooper's fibromyalgia as a medically determinable impairment due to insufficient evidence in the record, the ALJ should have recontacted Dr. Burns or one of Cooper's other physicians to determine whether Cooper's fibromyalgia satisfies the criteria set forth in SSR 12-2p").

While the parties dispute whether this was a harmless error (plaintiff's Memorandum of Law [10-1], p. 21; Commissioner's Brief [15-1], p. 10), I conclude that the error was not harmless.  "[T]he ALJ's error in finding that Plaintiff's fibromyalgia was not a

medically determinable impairment impacted the subsequent steps of the disability determination process" (Penny Lou S. v. Commissioner of Social Security,  2019 WL 5078603, *8 (D. Vt. 2019)), and may have altered ALJ Weir's assessment of plaintiff's credibility. *See* id.; Casselbury v. Colvin, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) (the ALJ "did not consider the potential functional limitations as a result of [p]laintiff's fibromyalgia symptoms after discounting [p]laintiff's fibromyalgia as a medically determinable impairment, and accordingly, remand is warranted"); Cooper, 2019 WL 1109573 at *5. *See also* Agostino, 2020 WL 95421, *4 ("the Commissioner asserts that any error is harmless, insofar as Agostino has not identified 'any evidence to support greater limitations than already accounted for in the RFC finding.' . . .  But given the lack of any competent medical opinion, the Court, like the ALJ, is not in a position to assess the extent of functional limitation posed by Agostino's impairments").[8]  Therefore, this error should also be corrected on remand.

## CONCLUSION

        For these reasons, plaintiff's motion for judgment on the pleadings [10] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Decision and Order but is otherwise denied, and the Commissioner's motion [15] is denied.

**SO ORDERED**.

 Dated: February 3, 2021

                                        /s/Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge

---

[8]        Based on my decision to remand, I have not considered plaintiff's remaining arguments directed at step two.